OPINION OF THE COURT
Leonard A. Weiss, J.
This court is called upon to determine whether the Chancellor and the Board of Trustees for the State University of New York have acted legally improper by failing to honor the request of a former student in the State University of New York to release his academic transcript because of his alleged failure to fully discharge his financial obligations for the education he received in the State University of New York system.
Petitioner, James H. Spas, moves under CPLR article 78 for an order directing respondents Clifton H. Wharton, Jr., as Chancellor and the Board of Trustees of the State University of New York to furnish him with a transcript *181 of his scholastic record while he attended the State University of New York at Albany during the academic years 1966-1967, 1967-1968 and the spring semester of 1971. The operative background facts are not in dispute. Petitioner Spas was a student at the State University of New York at Albany in the fall semester of 1966, the spring semester of 1967, the fall semester of 1967, the spring semester of 1968, and the spring semester of 1971. Apparently, petitioner Spas was delinquent in that he failed to completely meet the charges imposed by the State University of New York at Albany for the spring semester of 1967 and the spring semester of 1971. Although the precise amount petitioner Spas owes the State University will have to be referred to Trial Term for resolution pursuant to CPLR 7804 (subd [h]), there appears to be no question but that the State University of New York at Albany Office of Student Accounts by letter dated April 27, 1979 claimed that petitioner owed $491.25 for the spring semester of 1967 and the spring semester of 1971; whereas, petitioner alleges $367.50 of this amount was paid by check of Josephine R. Spas dated March 18,1967 drawn on her account with the Marine Midland Chautauqua National Bank in Jamestown, New York. To consider the legal issues raised by this proceeding, it is only significant that the petitioner appears to owe SUNY money for his formal education. Effective July 7, 1976, the Trustees of the State University of New York acting in accordance with the authority given them in section 355 (subd 2, par i) of the Education Law “To * * * regulate tuition charges where no provision is otherwise made therefor by law, and regulate other fees and charges, curricula and all other matters pertaining to the operation and administration of each state-operated institution in the state university”; adopted the following rule which appears at 8 NYCRR 302.1 (j) : “Time and Method of Payment, additional guidelines. The chancellor, or his designee, shall issue regulations concerning the time and method of payment of all fees included in this section, and shall issue such other guidélines as shall be necessary to implement the definitions, regulations and schedule of rates adopted herewith. Such regulations and guidelines shall provide that, except where otherwise au *182 thorized, no person shall receive credit or other official recognition for work completed satisfactorily, or be allowed to re-register, until all tuition, fees and all other charges authorized by the State University have been paid, or University student loan obligations have been satisfied.” In the fall of 1978, petitioner Spas wrote to the registrar at the State University of New York at Albany and requested a transcript of his scholastic records while in attendance at that institution.. Petitioner’s request was referred to the Attorney-General’s office where it was denied for the reason that petitioner had failed to satisfy his financial obligations to SUNY. Subsequent legal efforts by the Attorney-General’s office to obtain a judgment against petitioner Spas were unsuccessful because the Statute of Limitations had run on the debt and, a default judgment obtained against petitioner Spas was vacated by Hon. Con. Cholakis of this court by order dated January 11, 1980 on the grounds that the judgment was illegally obtained because petitioner was never properly served in that action.
In this proceeding, petitioner urges that the respondents are acting illegally and improperly by failing to comply with petitioner’s request for release of his academic transcript until petitioner satisfies the financial obligations respondents allege he owes to SUNY. In support of this argument, petitioner urges that the debt is barred by the Statute of Limitations; that 8 NYCRR 302.1 (j) was beyond the authority of the trustees to enact because it is inconsistent with the Federal Family Educational Rights and Privacy Act of 1974 (US Code, tit 20, § 1232g et seq.), and that the respondents acted improperly in denying petitioner’s request relying upon 8 NYCRR 302.1 (j) which was not enacted until approximately five years after petitioner’s formal education at SUNY at Albany terminated.
Respondents’ request that the petition be dismissed suggesting that petitioner’s arguments lack merit because (1) the uncollectibility of a debt because of a discharge in bankruptcy or the passage of a Statute of Limitations does not constitute payment of the debt or satisfaction of the legal obligation which the debt represents (referring to 1977 Opns Atty Gen 74, which cites Collier on Bankruptcy, *183 § 17.27 and Girardier v Webster Coll., 563 F2d 1267) to support the opinion that the State University of New York can withhold a transcript to obtain payment of financial obligations owing to it even though the expiration of the Statute of Limitations makes legal collection and enforcement of the debt impossible; (2) 8 NYCRR 302.1 (j) is a lawful and reasonable exercise of the powers given to the State University trustees under section 355 (subd 2, par i) of the Education Law; and (3) the fact the regulation under which respondents acted took effect after petitioner finished his formal education is of no legal relevance because the petitioner’s request for a transcript came in the fall of 1978 when the regulation had been in effect for at least two years. This court finds that a triable issue of fact has been raised concerning the precise amount the petitioner owes to the State University of New York and directs, in accordance with CPLR 7804, that this issue be referred to the Albany County Trial Term with a preference in the interest of justice so that petitioner may have a decision on what the precise amount is, if any, that he owes to the State University of New York at Albany. This court denies the petition in all other respects and directs it be dismissed with prejudice. The mechanism of withholding college transcripts as a device to insure collection of obligations owed to an educational institution is legally justified if one considers that the transcript providing function of the educational institution is merely one of its contractual duties which need only be "satisfied if the student, in turn, satisfies his contractual obligations to the educational institution. This basic principle of contract law has become formalized for the State University of New York in 8 NYCRR 302.1 (j). Even in the absence of the regulation, it would appear that an educational institution is under no obligation to provide academic transcripts at the request of students who have allegedly' failed to meet their financial obligations to the university (see, e.g., Girardier v Webster Coll., 563 F2d 1267). The contractual relationship between an educational institution and its students has long been recognized as the legally proper context within which to determine actions by a student who alleges that the educational institution has acted in viola *184 tion of his rights (cf. State of New York v Fenton, 68 AD2d 951; Matter of Carr v St. John’s Univ., 17 AD2d 632, affd 12 NY2d 802, and Anthony v Syracuse Univ., 224 App Div 487). Because the trustees’ regulation being questioned in this proceeding appears to be no more than a codification of the State University’s contractual rights, this court finds nothing legally improper in the regulation itself. In passing, the court is mindful of the fact that administrative agency regulations enacted in accordance with statutory authority to carry out in any reasonable way the purposes of the statute are entitled to a presumption of validity (see, e.g., Matter of Harbolic v Berger, 43 NY2d 102, 109). This court does not find the subject regulation by the trustees to be inconsistent with the Federal Family and Educational Rights Privacy Act of 1974 referred to by petitioner because that act appears to give “each educational agency or institution [the right to] establish appropriate procedures for the granting of a request by parents for access to the educational records of their children”. In this case, the State University imposed as part of its procedural making authority the reasonable requirement that the student have paid his financial obligations. Finally, this court is not persuaded that the respondents have acted improperly because the debt of the petitioner appears to be barred by the Statute of Limitations. Under New York law, a debt barred by the Statute of Limitations is legally unenforceable which is not to say that the debt is discharged (see, e.g., Johnson v Albany & Susquehanna R. R. Co., 54 NY 416; Allstate Ins. Co. v Consolidated Mut. Ins. Co., 35 AD2d 535). In State of New York v Wilkes (41 NY2d 655) the Court of Appeals, in a unanimous opinion, held that student loans were not dischargeable in bankruptcy to protect the integrity of the student loan program. Although that case concededly involved different issues of law and different facts, there does appear to be a public policy argument which favors permitting educational institutions to collect debts barred by the Statute of Limitations in an effort to preserve their financial integrity.
The fact that respondents in this case sought to implement the regulation enacted in 1976 in response to a request made by petitioner in 1978 does not appear to be improper *185 because this court would find even in the absence of the regulation, the educational institution, by assertion of its contractual right, could have withheld the petitioner’s transcript pending final satisfaction of any financial obligation owed to the university. Accordingly, the petition is dismissed and the question of a precise amount petitioner owes to the State University is referred to the Albany County Trial Term with a preference for trial.